IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

ENTERED
FEB 1 0 1997
97 FEB 10 PM 1:34
U.S. DISTRICT COURT
N.D. OF ALABAMA
FILED

ALTON C. HALL, et al.,
Plaintiffs,

v. CV-96-PT-1402-E

ARROW TRUCK SALES, INC., et al.,
Defendants.

## MEMORANDUM OPINION

This cause comes on to be heard on Arrow Truck's Motion for Summary Judgment filed on November 12, 1996.[1].

### BACKGROUND

Arrow Truck Sales, Inc. (Arrow) is a buyer and seller of used trucks. In late 1994, Arrow bought 24 trucks from Truck World Trucks, Inc. (Truck World). Thirteen of these trucks were 1992 Kenworth trucks. Truck World purportedly represented and gave documents to Arrow showing that the Kenworth trucks had 425-horsepower engines. An Arrow salesman, Doug Perryman (Perryman), purportedly inspected the trucks and found that the identification plates and engine stickers also identified the engines as 425-horsepower. The personality modules of the Caterpillar on-board computer system also purportedly showed that the engines were 425-horsepower.

[1] Initially, Alton Hall and Richard Lee Hicks were the named plaintiffs in this action. The defendants asserted, and Hicks agreed, that he was judicially estopped from asserting any claims against the defendants. The court will accordingly dismiss Hicks as a plaintiff.



18

In September 1994, Alton Hall (Hall) contacted Perryman about purchasing a used truck from Arrow. Perryman sent Hall pictures of various trucks that were for sale. After viewing the pictures, Hall decided to purchase one of the Kenworth trucks. The exact Kenworth from the picture, however, was no longer available. Hall then purchased another similar Kenworth truck from Arrow.

Sometime around November or December 1994, Arrow discovered that the trucks did not have 425-horsepower engines but, instead, had 350-horsepower engines. At the same time, in November 1994, Richard Hicks, a co-worker of Hall, was driving the Kenworth truck purchased from Arrow when it broke down in Pennsylvania. The repair shop in Carlisle, Pennsylvania that worked on the truck told both Hicks and Hall that the engine was, in fact, a 350-horsepower engine. According to Hicks, he then called Perryman to inform him of the discrepancy. Purportedly, Perryman initially stood behind his representation as to engine size but said he would help compensate Hall. Hall argues, however, that Arrow offered no immediate relief nor reimbursement for converting the engine to a 425-horsepower engine. Arrow then sued Truck World for the misrepresentation and later settled the lawsuit for $23,000. On January 20, 1995, Arrow wrote the purchasers of the Kenworth trucks to notify them of the horsepower discrepancy and to offer to pay for converting the engines to 425-horsepower. Arrow eventually paid for the costs of converting the engine horsepower on all of the trucks sold (except plaintiff's) and on the trucks remaining in their inventory.

## CONTENTIONS

Hall's complaint alleges, in part, the following claims: (1) deceit and fraudulent deceit;

(2) willful, wanton, and/or negligent conduct; (3) negligent and/or wanton supervision, training, hiring, and care; and (4) suppression of material facts. Each claim apparently stems from the same three purported acts of the defendants.[2]

First, Hall contends that Perryman made false representations during the sales negotiations. Specifically, Hall claims that Perryman said, "I'm looking at the truck. I see it right here. It's a good truck."[3] Hall argues, however, that Perryman never saw the truck because he was in Kansas City while the truck was in Cincinnati.

The defendants contend, nevertheless, that this allegation is outside the scope of the complaint. They further argue that the purported comment was not placed in any chronological context and, thus, may have been true when made. In any event, the defendants claim, Hall admitted that the delivery driver told him the truck came from Cincinnati when he received it. They argue, therefore, that Hall did not act based on any alleged misrepresentation by the defendants in deciding to keep the truck.

Second, the plaintiff claims that the defendants represented that the truck would adhere to all Department of Transportation (DOT) regulations, have a rebuilt lower engine, new rods on the motor, and new tires. After delivery, however, the plaintiff allegedly discovered that the truck was leaking oil and water, had recapped tires, and the horn did not work. The plaintiff, consequently, claims that the defendants lied about the truck's condition.

---

[2] Plaintiff's complaint exemplifies the practice of "shotgun" pleading recently condemned by the Eleventh Circuit. See Anderson v. District Bd. of Trustees of Central Florida Community College, 77 F.3d 364, 366-67 (11th Cir. 1996). The complaint includes six counts, all of which contain the same 35 line set of purported facts. Each subsequent count "reavers" the past counts. The court notes that plaintiff's pleading style, consequently, "reaverred" the same set of purported facts 63 times.

[3] Hall Deposition, p.18-19.

In response, the defendants note that the plaintiff accepted the truck with knowledge of the alleged problems. The defendants argue, moreover, that the plaintiff's own evidence reflects that he lacks knowledge or evidence showing that the defendants failed to rebuild the engine or install new rods. The defendants also note that the truck passed a DOT inspection two days after purchase when Richard Hicks fixed a loose wire in the horn. Lastly, they argue, the plaintiff's claim regarding the tire condition is outside the scope of the complaint.

The plaintiff's third argument is that the defendants misrepresented the truck's horsepower. Hall argues that he paid for a 425-engine and would not have purchased the truck otherwise, as engine size affects the fair market value and desirability of the truck.

The defendants contend, however, that one can only be liable for concealing facts of which one has knowledge (citing Atkinson v. Long, 559 So. 2d 55, 57 (Ala. Civ. App. 1990) (quoting Harrell v. Dodson, 398 So. 2d 272 (Ala. 1981)). They argue that the evidence establishes that the company and Perryman were deceived over the truck's horsepower. Further, the defendants claim that once they learned the truth they notified the purchasers and offered to convert the engines at its own expense.

The plaintiff responds by noting that Arrow claims to have learned of the engine-size discrepancy on December 12, 1994. The plaintiff claims, however, that he notified Arrow of the discrepancy in November 1994 immediately after learning about it from the Pennsylvania repair shop. Moreover, plaintiff argues, Arrow is an experienced truck seller and, as such, should have discovered the discrepancy.

The defendants, nevertheless, argue that the records provided to them reflected that the engines in all the Kenworth trucks were 425-horsepower. Moreover, they claim, the engines

had 425-horsepower identification plates (or engine stickers) and the personality modules of the Caterpillar on-board computer system showed that the engines were 425-horsepower.

## LEGAL STANDARD

On a motion for summary judgment, the court must assess the proof to see whether there is a genuine need for trial. Matsushita Elec. Indus. Co. V. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate only if this court concludes that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing this court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met this burden, the nonmoving party "must produce evidence that shows there exists a genuine issue of material fact." Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing there exists a genuine issue for trial. Celotex, 477 U.S. at 324. The court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . " in deciding whether to grant or deny a summary judgment motion. FED. R. CIV. P. 56(c). In

making the determination of whether a given factual dispute requires submission to a jury, the court must view the presented evidence through the prism of the substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

Considering the above, this court must examine the evidence to decide if there exists a genuine issue of material fact.

## ANALYSIS

### Willful, Wanton, and/or Negligent Conduct & Negligent Supervision, Training, and Hiring

The plaintiff has alleged claims based on: (1) willful, wanton, and/or negligent conduct, and (2) negligent supervision, training, and hiring. The defendants challenged these allegations in their motion for summary judgment and supporting brief by offering, in part, affidavits and deposition testimony. Hall offered nothing in rebuttal on these claims and instead argued only his misrepresentation and related fraud claims. Accordingly, the defendants are entitled to judgment on the above listed claims.

### Deceit, Fraudulent Deceit, & Suppression

The court will next address the plaintiff's claims for misrepresentation, deceit, and suppression. The plaintiff's deceit allegation stems from Perryman's purported comment that, "I'm looking at the truck. I see it right here. It's a good truck." Hall claims that

Perryman never saw the truck and "knowingly lied when he said he looked at the truck and determined it to be a good truck."[4] From acting on this purported statement, Hall contends that he suffered, at a minimum, nominal damages and is, thus, entitled to punitive damages.

The court concludes that Perryman's alleged comments may be evidence of fraud relating to the truck's general quality, but do not independently satisfy a claim for fraud. It is unreasonable to suggest that the plaintiff suffered damage because the truck came from Cincinnati rather than Kansas City. Even construing the comments as quality representations, the court concludes that such comments amount to mere puffery and not actionable fraud.

The plaintiff correctly asserts that he need only suffer nominal damages to be entitled to possible punitive damages. See Shoals Ford, Inc. v. McKinney, 605 So. 2d 1197 (Ala. 1992); First Bank of Boaz v. Fielder, 590 So. 2d 893 (Ala. 1991). A prerequisite to recover any damages, however, is establishing a fraud. While the evidence to the fraud claim(s) may be weak, the court cannot decide the issue as a matter of law. A jury may determine that parties as experienced in the business as defendants would know the difference between a 350 and 425 horsepower engine. Of course, the court will instruct the jury that unless it finds that an agent actually knew the horsepower, there can be no intentional misrepresentation or punitive damages. There could be an innocent misrepresentation. Compare Nieto v. Pence, 578 F.2d 640 (5th Cir. 1978).

---

[4] Plaintiff's Response Brief, p.2.

This 10 day of Feb, 1997.

Robert B. Propst
Senior United States District Judge